**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROBERT HUESO,<br><br>                     Plaintiff,<br><br>   v.<br><br>SELECT PORTFOLIO SERVICING, INC., *et al*.,<br><br>                  Defendants. | Case No. 18-cv-1892-BAS-WVG<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>**[ECF No. 18]** |

In 2006, Plaintiff Robert Hueso obtained from Defendant Credit Suisse Financial Corporation ("Credit Suisse") a refinancing loan for his property at 3776 Byrd Street, Chula Vista, California (the "Property"). (ECF No. 16, 2019 First Am. Compl. ("2019 FAC") ¶ 1.) Plaintiff made regular payments on the loan to Defendant Select Portfolio Servicing, Inc. ("SPS") until 2017, when he purportedly discovered that SPS was allegedly misapplying his payments to forced-insurance and property taxes. (*Id.* ¶¶ 2, 31, 34.) Plaintiff ceased paying any amount on the loan. (*Id.* ¶¶ 8, 55.) Defendant SPS claimed that Plaintiff was in default, and Defendant Quality Loan Service Corporation ("Quality") filed a Notice of Default on the Property. (*Id.* ¶ 3.) Based on these allegations, Plaintiff originally brought suit against all Defendants on August 13, 2018, with the apparent goal to stop the non-judicial foreclosure of the Property by Defendants SPS and Quality. (ECF No. 1.)

Nearly a year after filing his original complaint and two additional complaints in this case as well as a separate identical case, Plaintiff now moves for a temporary restraining order and an order to show cause why a preliminary injunction should not issue (the "TRO/PI motion") that would block Defendants SPS and Quality from moving forward with the non-judicial foreclosure of the Property scheduled for August 2, 2019. (ECF Nos. 18, 22.) Defendants oppose Plaintiff's TRO/PI motion. (ECF No. 21.) The present motion is suitable for determination on the papers without oral argument or a hearing. S.D. Cal. Civ. L.R. 7.1.d.1. Because the Court finds that Plaintiff is unlikely to succeed on the merits of the claims on which he premises his motion and has otherwise failed to show that he is entitled to the immediate injunctive relief he now seeks, the Court denies Plaintiff's TRO/PI motion.

## RELEVANT FACTUAL ALLEGATIONS

According to the operative complaint, Plaintiff refinanced his home in 2006 through a loan he obtained from Credit Suisse, secured by a Deed of Trust recorded with the San Diego County Recorder's Office in October 2006 and documented in a Promissory Note. (2019 FAC ¶¶ 2, 12, 28.) SPS, a subsidiary of Credit Suisse, was the servicer of the Credit Suisse loan and Plaintiff "made regular payments" to SPS on a monthly basis until 2017. (*Id.* ¶¶ 2, 10, 31–32.) In 2017, Plaintiff became concerned that SPS was misapplying his payments on the refinanced loan. (*Id.* ¶¶ 2, 32.)

On November 7, 2017, Plaintiff wrote "qualified written request[s]" under 12 U.S.C. § 2605 of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S. § 2601 *et seq*., requesting swaths of information from SPS. (*Id.* ¶¶ 36, 38, 46.) In response to various requests by Plaintiff and counsel that Plaintiff had retained, Plaintiff received "an unverified copy of the Credit Suisse Note, an unrecorded copy of a purported Deed of Trust, and a limited breakdown of payments he made to . . .

SPS." (*Id.* ¶ 47.) But SPS failed to respond to many of Plaintiff's other requests for information, which Plaintiff contends "did not satisfy Defendant's obligations under RESPA." (*Id.*) Because "SPS refused to provide [] documentation" regarding the "current owner of" the Promissory Note and "is unable to produce the original" Promissory Note for Plaintiff's inspection, Plaintiff stopped making payments on the loan and instead "has held his payments in abeyance until such documents are produced." (*Id.* ¶¶ 48, 55.) Plaintiff additionally contends that Credit Suisse "destroyed" the Promissory Note "with the intent [] to cancel" it, to which Plaintiff purportedly "consents." (*Id.* ¶ 49.) Plaintiff concludes that "[a]s a result of said destruction, the Credit Suisse Note is extinguished as a matter of law." (*Id.*)

Plaintiff also claims that the 2006 Deed of Trust identifies "MERS" as the beneficiary under the loan agreement between Plaintiff and Credit Suisse. (*Id.* ¶ 29.)[1] Plaintiff claims that at the time Credit Suisse designated MERS as the beneficiary, MERS had not been authorized to do business in California since 2004. (*Id.* ¶¶ 17–18, 29, 54.) Plaintiff contends that after SPS received Plaintiff's requests for information and Plaintiff stopped making payments on his loan, MERS "wrongfully and unlawfully" assigned MERS's rights under the Deed of Trust to SPS on November 28, 2017. (*Id.* ¶ 50). Based on his contention that MERS was a suspended entity at the time of its 2006 designation as the beneficiary, Plaintiff claims that MERS's 2017 assignment to SPS and SPS's subsequent 2018 substitution of Quality as the trustee for the loan are voidable, thereby rendering the Notice of Default invalid. (*Id.* ¶¶ 21, 51, 54.) Quality commenced the foreclosure process on Plaintiff's

---

[1] Plaintiff uses "MERS" to refer both to (1) Mortgage Electronic *Registration* Systems Inc. (2019 FAC ¶ 15 (emphasis added)), the entity Credit Suisse named as a beneficiary in 2006, and (2) to Mortgage Electronic *Registry* Systems, Inc., an entity Plaintiff contends is a successor foreign entity that qualified to do business in California in 2010, (*id.* ¶ 17 (emphasis added)).

Property on August 1, 2018, through the filing of a Notice of Default recorded with the San Diego Recorder's Office. (*Id.* ¶ 52.) On April 10, 2019, Quality provided Plaintiff with a notice of sale scheduled for August 2, 2019. (ECF No. 18-3 Robert Hueso Decl. ¶ 15 Ex. F.) It is this foreclosure that Plaintiff now seeks to enjoin.

## PROCEDURAL HISTORY

Plaintiff filed his initial complaint in this case on August 13, 2018, two weeks after Quality filed the Notice of Default against the Property. (ECF No. 1, Ex. A (Notice of Default).) Plaintiff raised seven claims in total, including a RESPA claim against SPS, a cancellation of instrument claim against all Defendants under California Civil Code § 3412, receipt of stolen property and "common count" against SPS and Quality, a declaratory judgment claim against all Defendants under 28 U.S.C. § 2201, a claim for an accounting against all Defendants, and a California Unfair Competition Law claim against all Defendants. (*Id.* ¶¶ 48–83.) Defendants SPS, Quality and Credit Suisse moved to dismiss the original complaint on October 18, 2018 pursuant to Rule 12(b)(6). (ECF No. 3.) Plaintiff failed to oppose the motion. Then-presiding Judge Jeffrey Miller granted Defendants' unopposed motion to dismiss on November 19, 2018 and the Clerk of the Court entered a judgment on the same day against Plaintiff, which dismissed Plaintiff's claims without prejudice. (ECF Nos. 4, 5.)

The day after the entry of judgment, Plaintiff filed a First Amended Complaint (the "2018 FAC") against Defendants, without leave of court. (ECF No. 6.) On January 3, 2019, Plaintiff requested the Clerk of the Court enter a default against Defendants on the 2018 FAC. (ECF No. 8.) On April 30, 2019, the Court instructed the Clerk to enter the requested default. (ECF No. 9.) The Clerk apparently did so.

During this period, however, Plaintiff had filed a separate action against the

Defendants on April 1, 2019, using a complaint that was largely duplicative of the 2018 FAC in this case. (*Hueso v. Select Portfolio Servicing, Inc.*, No. 19-cv-606-LAB-AGS, ECF No. 1 Complaint (S.D Cal. Apr. 1, 2019) ("*Hueso II*"); *compare id. with* ECF No. 6.) After *Hueso II* was transferred to Judge Miller on April 5, 2019, (ECF No. 3), Defendants filed a Rule 12(b)(6) motion to dismiss the *Hueso II* complaint on April 30, 2019, raising the same issues presented in their first motion to dismiss the original complaint in this case. (*Compare* ECF No. 3 *with Hueso II*, No. 19-cv-606-JM-WVG, ECF No. 5 (S.D. Cal. Apr. 30, 2019).) Confronted "with a unique situation," Judge Miller "determined the best way to proceed is to reinstate the 2018 action, 18cv1892 JM (WVG)" and directed Plaintiff to move for leave to file an amended complaint in the originally filed action or to seek leave to file an opposition to the motion to dismiss, if he wished to proceed with his claims against Defendants. (ECF No. 10.) Judge Miller vacated the April 30, 2019 entry of default on the 2018 FAC and closed *Hueso II*. (*Id.*)

On May 20, 2019, Plaintiff filed a motion for leave to file a "First Amended Complaint," (ECF No. 11), which Judge Miller granted on June 13, 2019, over Defendants' objections that amendment was futile, unreasonably delayed, and sought in bad faith, (ECF No. 15). Plaintiff subsequently filed the operative 2019 FAC, raising the same seven claims asserted in the original complaint. (ECF No. 16.) Defendants filed their third motion to dismiss on July 8, 2019. (ECF No. 17.) Days later on July 12, 2019 and for the first time during the pendency of this action concerning the non-judicial foreclosure of his Property, Plaintiff filed the present TRO/PI motion to block foreclosure of his Property scheduled for August 2, 2019. (ECF No. 18). Judge Miller recused from the case on July 15, 2019, resulting in its transfer to this Court. (ECF No. 19.) Defendants' motion to dismiss remains pending.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555 U.S. 7, 22 (2008). The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiffs seeking a preliminary injunction "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). A district court is not required to hold an evidentiary hearing to resolve a request for immediate injunctive relief when the evidence before the court is sufficient to decide whether such relief is warranted. *See Lopez v. Brewer*, 680 F.3d 1068, 1078 (9th Cir. 2012); *Kenneally v. Lungren*, 967 F.2d 329, 334–35 (9th Cir. 1992).

## DISCUSSION

In his cancellation of instrument claim, Plaintiff claims that his original 2006 Promissory Note with Credit Suisse, the 2006 Credit Suisse Deed of Trust, the 2017 MERS assignment to SPS, the 2018 SPS substitution of Quality, and the 2018 Notice of Default "are void or voidable" under California law as "invalid legal documents." (2019 FAC ¶¶ 67–77; ECF No. 18-1 at 12–15.) Plaintiff moves for injunctive relief to enjoin the August 2, 2019 sale of the Property on the ground that he is likely to succeed on the merits of this claim and contends that he will suffer irreparable harm if the instruments are not otherwise canceled. (ECF No. 18-1 at 12–18.)[2] Plaintiff

---

[2] Plaintiff also argues that he is likely to succeed on the merits of his

argues that any foreclosure is invalid because none of the Defendants were legally authorized to file the August 1, 2018 Notice of Default that commenced the foreclosure process against the Property. (*Id.* at 11–12.) The Court concludes that Plaintiff has not shown that he is likely to succeed on the merits of his cancellation of instrument claim, that he will suffer irreparable harm in the absence of the requested relief, or that the balance of the equities tip in his favor. As such, the Court declines to consider the public interest factor and denies Plaintiff's motion.

1. **Likelihood of Success on the Merits**

Section 3412 provides: "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable may, upon his application, be so adjudged, and ordered to be delivered up or canceled." Cal. Civ. Code § 3412. "To prevail on a claim to cancel an instrument, a plaintiff must prove (1) the instrument is void or voidable due to, for example, fraud, and (2) there is a reasonable apprehension of serious injury including pecuniary loss or the prejudicial alteration of one's position." *U.S. Bank Nat'l Assn. v. Naifeh*, 205 Cal. Rptr. 3d 120, 128 (Cal. Ct. App. 2016) (citation omitted). Plaintiff has not shown a likelihood of success on these grounds.

As an initial matter, despite claiming that all the subject instruments are void or voidable under Section 3412, Plaintiff cannot, as a matter of law, press a cancellation of instrument claim against his original 2006 Promissory Note with Credit Suisse or the 2006 Credit Suisse Deed of Trust. "Actions for cancellation of an instrument are subject to the four-year limitations period in the catchall provision

---

declaratory relief claim. (ECF No. 18-1 at 17–18.) The claim, however, is substantively duplicative of the merits of Plaintiff's underlying cancellation of instrument claim. Thus, analysis of Plaintiff's likelihood of success on the merits of his cancellation claim applies equally to his duplicative request for declaratory relief.

of [Cal. Code. Civ. P.] section 343." *Salazar v. Thomas*, 186 Cal. Rptr. 3d 689, 695 n.8 (Cal. Ct. App. 2015) (citing *Moss v. Moss*, 128 P.2d 526, 529 (Cal. 1942)). Plaintiff did not file his original complaint until August 13, 2018. (ECF No. 1.) Plaintiff's cancellation of instrument claim is therefore "clearly time barred" to the extent Plaintiff seeks to cancel his original 2006 Promissory Note with Credit Suisse or the 2006 Credit Suisse Deed of Trust that named MERS as a beneficiary. *See Dela Cruz v. Select Portfolio Servicing, Inc.*, No. 19-CV-00283-LHK, 2019 WL 2299857, at *9 (N.D. Cal. May 30, 2019).

Second, Plaintiff is not likely to succeed on the merits of his cancellation of instrument claim to the extent it is based on his view that the 2006 designation of MERS as the beneficiary of the loan was improper and invalid. Plaintiff argues that the designation was invalid because the California Franchise Tax Board had suspended MERS in 2004. (ECF No. 18-1 at 7.) Thus, Plaintiff argues that MERS was not "legally capable of contracting at the time the [Deed of Trust] was recorded." (*Id.* at 14.) This argument, however, ignores the authority granted by the terms of Plaintiff's 2006 Deed of Trust, which courts have found sufficient to reject a claim that MERS lacks authority to act as a nominal beneficiary.[3]

---

[3] Plaintiff's argument also fails on the terms of his own pleadings and arguments. Plaintiff's authorities show only that a "*suspended* corporation cannot sell, transfer or exchange real property in California, and contracts entered into *during the time of suspension* are voidable by the other party or parties through legal action." (*Id.* at 8 (quoting *Ctr. for Self-Improvement & Cmty. Dev. v. Lennar Corp.*, 94 Cal. Rptr. 3d 74, 79 (Cal. Ct. App. 2009)) (emphasis added).) But "[a] suspended corporation can regain its corporate powers[.]" *Ctr. for Self-Improvement & Cmty. Dev. v. Lennar Corp.*, 94 Cal. Rptr. 3d at 80. Plaintiff expressly contends that "[f]ollowing the suspension of the First M.E.R.S., M.E.R.S. qualified a successor entity, to do business in California, also known as "Mortgage Electronic Registry Systems, Inc. (M.E.R.S.)" in 2010. (ECF No. 18-1 at 7.) Accepting Plaintiff's arguments, Plaintiff cannot soundly argue that MERS lacked authority to assign beneficiary rights to SPS *in 2017*. *See Adam v. Mortg. Elec. Registration Sys., Inc.*,

In relevant part, the notarized October 2006 Deed of Trust, signed by Plaintiff, states that the "[b]orrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument." (Hueso Decl. ¶ 4 Ex. A at page 3 of 18.) Based on this very language, "California appellate courts have consistently held that where, as here [] a deed of trust 'state[s] that, as a nominee for the lender and the lender's successors and assigns, MERS ha[s] the right to exercise all interests of the beneficiary,' MERS 'ha[s] authority to . . . foreclose' and can 'assign both the [deed of trust] and note.'" *Enos v. U.S. Bank*, *N.A.*, No. 18-cv-06101-MMC, 2019 WL 1411221, at *3 (N.D. Cal. Mar. 28, 2019) (quoting *Herrera v. Fed. Nat'l Mortg. Ass'n*, 141 Cal. Rptr. 3d 326, 334 (Cal. Ct. App. 2012)). The result is that Plaintiff's cancellation of instrument claims against MERS's 2017 assignment to SPS, SPS's 2018 substitution of Quality as trustee, and the 2018 Notice of Default filed by Quality on SPS's behalf are unlikely to succeed because Plaintiff cannot now claim that the MERS designation in 2006 was invalid. *See Koenig v. Bank of Am., N.A.*, No. 1:13-CV-0693 AWI BAM, 2016 WL 8731110, at *3 (E.D. Cal. Mar. 18, 2016) ("[A] trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose,

---

CV 10-7886 PSG (PLAx), 2011 WL 63651, *3 (C.D. Cal. Jan. 4, 2011) ("[A] corporation's past, unregistered business activities are 'retroactively validated' upon later, successful registration with the Secretary of State.") (finding that plaintiffs "cannot now complain that [MERS's transactions] are without legal effect," specifically a 2006 loan between plaintiffs and Countrywide Home Loans, Inc. which included MERS as the beneficiary, because "MERS registered with the California Secretary of State on July 21, 2010.").

is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights." (quoting *Siliga v. Mortg. Elec. Registration Sys., Inc.*, 161 Cal. Rptr. 3d 500, 506 (Cal. Ct. App. 2013), *overruled on other grounds by Yvanova v. New Century Mortg. Corp.*, 365 P.3d 845, 859 n.13 (Cal. 2016))).

Third, Plaintiff is otherwise unable to show a likelihood of success on the merits of his cancellation of claim against the Notice of Default. As the Ninth Circuit has explained, "MERS is a private electronic database . . . that tracks the transfer of the 'beneficial interest' in home loans, as well as any changes in loan servicers." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011). At the origination of the loan, MERS is simply designated in the deed of trust as a nominee for the lender. *Id.* at 1039 (citing Robert E. Dordan, *Mortgage Electronic Registration Systems (MERS), Its Recent Legal Battles and the Chance for a Peaceful Existence,* 12 Loy. J. Pub. Int. L 177, 178 (2010)). "In the event of a default on the loan, the lender may initiate foreclosure in its own name, or may appoint a trustee to initiate foreclosure on the lender's behalf." *Id.* Even if MERS was an invalid transferee, this does not mean no party has the power to foreclose. *Id.* at 1044. As the Ninth Circuit explained in *Cervantes:*

> Here, MERS did not initiate the foreclosure: the trustee initiated the foreclosure in the name of the lenders. Even if MERS was a sham beneficiary, the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after the plaintiffs defaulted on their loans. The plaintiffs' allegations do not call into question whether the trustees were agents of the lenders.

*Id.*

Similarly, in this case, even if the Court accepts the premise that Credit Suisse's 2006 designation of MERS as beneficiary is somehow invalid, Plaintiff has not shown that he can seek cancellation of the Notice of Default. Nothing about the Notice of

Default has altered Plaintiff's payment obligations under the mortgage loan or the substantive rights that may be asserted against him after a default. *See Johnson v. PNC Mortg.*, 80 F. Supp. 3d 980, 989 (N.D. Cal. 2015). The Property was admittedly offered as security for a loan on which Plaintiff has repeatedly admitted that he stopped making payments. (2019 FAC ¶¶ 2, 28, 48.) Quality, not MERS, is the entity that initiated the foreclosure in this case on behalf of SPS, the entity to which Plaintiff concedes he made payments since taking out the loan. (*Id.* ¶¶ 2, 10, 31–32, 52.) Plaintiff does not allege that Quality was not acting as an agent of the lender. Plaintiff's argument that he is likely to succeed on the merits of cancellation of instrument against the Notice of Default therefore fails.

Plaintiff's additional argument that he is entitled to a TRO or PI enjoining the sale of the Property because SPS failed to produce the original note when he requested it or because the original copy of the note was "destroyed" fails. (2019 FAC ¶ 49). The beneficiary of a note does not need to physically possess the underlying promissory note to foreclose. *See Debrunner v. Deutsche Bank Nat'l Tr. Co.*, 38 Cal. Rptr. 3d 830, 835 (Cal. Ct. App. 2012); *Christopher v. First Franklin Fin. Corp.*, No. 10CV17 DMS (CAB), 2010 WL 1780077, at *2 (S.D. Cal. Apr. 30, 2010) (dismissing claims to set aside non-judicial foreclosure sale and cancel trustee's deed upon sale, where claims predicated on alleged failure to possess promissory note). Accordingly, the Court concludes that Plaintiff has failed to show a likelihood of success on the merits of his cancellation of instrument claim.

### 2. Irreparable Harm

Plaintiff has also failed to make the requisite showing that he faces both "immediate and irreparable injury" without the requested relief. Fed. R. Civ. P. 65(b)(1)(A). Plaintiff concededly has had notice of the August 2, 2019 sale since April 10, 2019. (Hueso Decl. ¶ 15 Ex. F.) Plaintiff did not move for a TRO until

three months later, after Defendants again moved to dismiss on the same grounds on which they secured dismissal almost a year ago and a mere three weeks before the noticed sale. (ECF No. 18.) This delay strongly counsels against a finding that the requested relief is warranted. *See Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) ("that [the moving party] tarried so long before seeking this injunction is . . . relevant in determining whether relief is truly necessary"); *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *see also Dahl v. Swift Distribution, Inc.*, No. CV 10-00551 SJO (RZx), 2010 WL 1458957, at *4 (C.D.Cal. Apr. 1, 2010) (finding that an eighteen-day delay in filing TRO application "implies a lack of urgency and irreparable harm.").

### 3. Balance of the Equities

Finally, Plaintiff admits that he has not made any payments on the loan, nor attempted to tender any payments since 2017 based on his unilateral decision not to do so. (2019 FAC ¶ 48; *see also* Hueso Decl. ¶ 8.) During that time, SPS has been required to advance funds necessary to pay for property taxes and hazard insurance for the property, and the loan continues to incur charges. (ECF No. 21-1 SPS Decl. ¶¶ 8–9, Ex. D.) This weighs against granting Plaintiff's present motion. *See Puruganan v. HSBC Bank USA, Nat'l Ass'n*, No. C 12-05168 SBA, 2012 WL 5503542, at *4 (N.D. Cal. Nov. 13, 2012) (finding that plaintiffs had not shown that the balance of the equities favored them when they "made no showing that they have made any attempt to pay down that amount or otherwise bring themselves current on their debt."); *Quach v. Bank of Am., Nat. Ass'n*, No. C 12-5037 EJD, 2012 WL 4498873, at *4 (N.D. Cal., Sept. 28, 2012) ("[T]he court must be mindful that

foreclosure proceedings have commenced against Plaintiff due to her failure to pay according to the terms of the Deed of Trust she executed. For this reason, Plaintiff's complaint of irregularity must be viewed with an eye of inequity.").

**CONCLUSION & ORDER**

Without offering to make the payments due on his loan, Plaintiff seeks to prevent foreclosure of the Property on the ground that the underlying Promissory Note and Deed of Trust and all subsequent instruments are "invalid" documents subject to cancellation under California law. Plaintiff, however, is unlikely to succeed on the merits of this claim. Accordingly, this Court **DENIES** Plaintiff's motion for a TRO and **DECLINES** Plaintiff's request to issue an order to show cause why a PI should not issue. (ECF No. 18.)

**IT IS SO ORDERED.**

**DATED: July 31, 2019**

Hon. Cynthia Bashant
United States District Judge