1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

9

10
11
12
13
14
15

| | |
|---|---|
| ROBERT HUESO, an individual,<br><br><div align=right>Plaintiff,</div><br>  v.<br><br>SELECT PORTFOLIO SERVICING, INC., *et al.*,<br><div align=right>Defendants.</div> | Case No.  18-cv-01892-BAS-WVG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**(ECF No. 39)** |

16      Before the Court is a Motion to Dismiss Plaintiff Robert Hueso's First Amended
17  Complaint filed by Defendants Select Portfolio Servicing, Inc., Quality Loan Service
18  Corporation, and Credit Suisse Financial Corporation ("Defendants").  (ECF No. 39.)
19  Plaintiff opposes, and Defendants reply.  (ECF Nos. 40, 41.)  The Court finds this Motion
20  suitable for determination on the papers submitted and without oral argument.  *See* Fed.
21  R. Civ. P. 78(b); Civ. LR 7.1(d)(1).  For the reasons explained below, the Court **GRANTS**
22  **IN PART and DENIES IN PART** Defendants' Motion.

23                                        **BACKGROUND**

24      In 2006, Plaintiff obtained a home loan from Defendant Credit Suisse Financial
25  Corporation ("Credit Suisse") to refinance his property.  (First. Am. Compl. ("FAC") ¶ 2,
26  ECF No. 16.)  The loan was documented in a promissory note ("Note") secured by a Deed
27  of Trust ("Deed").  (*Id.* ¶ 28.)  The Deed identifies Mortgage Electronic Registration

28

System, Inc. ("MERS") as the beneficiary.  (*Id.* ¶ 29; Deed, Ex. A to FAC.)[1]  Plaintiff was informed that the servicer of the Note was Defendant Select Portfolio Servicing ("SPS"), a subsidiary of Credit Suisse.  (*Id.* ¶¶ 10, 31.)  Plaintiff made regular monthly payments to SPS totaling more than $420,000.  (*Id.* ¶ 31.)

## I.    Alleged Misapplication of Mortgage Payments by SPS

In 2017, Plaintiff "became concerned that [SPS] was misapplying his payments" because his statement showed that only $20,000 had been applied to the principal on the Note.  (FAC ¶¶ 2, 32.)  Plaintiff contacted SPS, which informed him that it had been applying some of his payments to "force-placed insurance" and a "tax escrow" account.  (*Id.* ¶ 33.)  However, Plaintiff claims that he personally maintained insurance on his home and was never notified that SPS did not have proof of coverage and would therefore obtain insurance and charge Plaintiff for it.  (*Id.* ¶ 33(b).)  Plaintiff also had neither been informed that his insurance policy had been terminated nor reimbursed by SPS for any duplicative insurance payments.  (*Id.* ¶ 33(c).)  Further, Plaintiff states that he "had never required the use of a tax escrow account" and had not "received notice from any taxing authority that [SPS] had paid taxes on his behalf" or that he had overpaid his taxes.  (*Id.* ¶ 33(a).)

Plaintiff states that he then contacted Credit Suisse to ask how much money SPS had forwarded to them on his account.  (FAC ¶ 34.)  Credit Suisse informed Plaintiff that his loan did not exist in their system.  (*Id.* ¶ 35.)

On November 7, 2017, Plaintiff made several "qualified written requests" ("QWRs") to SPS seeking information about his payments and advising SPS that that they made errors when calculating and applying his payments.   (FAC ¶¶ 36–41.)  Plaintiff alleges that SPS either did not respond or acknowledged his letters without explaining their actions or correcting the errors.  (*Id.*)  According to Plaintiff, the only information

---

[1] Because the exhibits attached to the FAC are alleged in the pleading and their authenticity is not in dispute, the Court considers them on the basis of the incorporation-by-reference doctrine.  *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *see also Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281 (C.D. Cal. 2016) (holding that courts can consider "materials attached to the complaint that are referenced by the complaint" at the 12(b)(6) stage).

SPS provided "was an explanation that the owner of the Credit Suisse Note was 'Fannie Mae in its capacity as trustee.'" (*Id.* ¶ 42.) Plaintiff then contacted Fannie Mae and was advised that Fannie Mae did not own any loans on residential property. (*Id.* ¶ 43.)

Plaintiff then retained counsel to contact SPS, which followed up on his QWRs and advised SPS that its failure to respond was subject to legal action. (FAC ¶ 44.) From November 2017 to February 2018, Plaintiff or his counsel sent eight letters to SPS requesting 16 items of information including, among other things: copies of the original Note and security instrument, all assignments of the instrument, information about the custodian of the original Note and the entity that funded the transaction, a complete audit history from the date of loan origination, information about the "force-placed insurance" obtained by SPS, and an itemized statement of the current payoff amount. (*Id.* ¶¶ 44–46.) In response, Plaintiff received only an unverified copy of the Note, an unrecorded copy of the Deed, and a limited itemization of his payments to SPS. (*Id.* ¶ 47.)

Plaintiff then demanded that SPS "provide documentary proof" that an owner of the Note existed and that SPS had been providing Plaintiff's payments to the owner and properly applying them to the balance of the loan. (FAC ¶ 48.) Plaintiff alleges that because SPS has refused to comply with this request, he is holding his payments in abeyance until this proof is provided. (*Id.*)

## II. Allegations Regarding Unlawful Assignment, Substitution, and Foreclosure

On November 28, 2017, MERS, the beneficiary of the Deed, executed a "Corporate Assignment of Deed of Trust" assigning its rights under the Deed to SPS. (FAC ¶ 50; Ex. B to FAC.) Plaintiff states MERS' assignment to SPS was unlawful because MERS had been suspended from operating in California at the time it was designated a beneficiary in 2006. (*Id.* ¶¶ 17, 54.) Specifically, Plaintiff claims MERS was suspended by the California Franchise Tax Board in 2004, only to be "briefly revived" in 2009 before being suspended again. (FAC ¶ 17.) Further, Plaintiff alleges that although a successor entity to MERS qualified to do business in California in 2010, this entity is the alter ego of the

- 3 -

initial MERS and thus "any and all transactions perpetrated by the Successor MERS are voidable at the option of" Plaintiff.  (*Id.* ¶¶ 18–21.)

On July 7, 2018, SPS recorded a "Substitution of Trustee" substituting Defendant Quality Loan Service Corporation ("Quality") for itself as trustee under the Deed.  (FAC ¶ 51; Ex. C. to FAC.)  Shortly thereafter, Quality sent Plaintiff a "Debt Validation Notice" to collect on the Note.  (FAC ¶ 57.)  About a month later, Quality recorded a Notice of Default and commenced foreclosure on Plaintiff's home.  (*Id.* ¶ 52; Ex. D. to FAC.) Plaintiff claims that SPS and Quality were not legally authorized to file the Notice of Default because neither Defendant appears on the Deed as the trustee or beneficiary.  (FAC ¶ 54.)  Further, according to Plaintiff, the Notice of Default is deficient under California law because it does not include a summary document and falsely represents that someone contacted Plaintiff to explore available options to avoid foreclosure.  (*Id.* ¶ 56.)

## III.  **Summary of Claims**

Based on these facts, Plaintiff alleges the following:

Count 1: Violation of RESPA: SPS and Quality violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, by failing to investigate, correct, and/or explain Plaintiff's account in response to his QWRs and by unlawfully misapplying the funds to a tax escrow account and force-placed insurance.  (FAC ¶¶ 62–63.)

Count 2: Cancellation of Instrument: Credit Suisse destroyed the Note, thus extinguishing it and rendering the Deed and all subsequent "Subject Instruments"— including the MERS assignment to SPS, SPS' substitution of Quality as Trustee, and Notice of Default—void.  (FAC ¶¶ 49, 55, 67–76.)

Count 3: Receiving Stolen Property: SPS and Quality are liable for receiving stolen property, on the basis that SPS was not entitled to keep his payments because the Note has been destroyed, or, alternatively, because SPS misapplied his payments.  (FAC ¶¶ 81–82.) Plaintiff also states that Quality knew Plaintiff's funds were stolen but nonetheless retained them for its own benefit and has continued to wrongfully foreclose on Plaintiff's property. (*Id.* ¶ 83.)

1  Count 4: Common Count: SPS and Quality unlawfully obtained Plaintiff's
2  payments on the Note and have been unjustly enriched by retaining these funds.  (FAC ¶¶
3  87–90.)

4  Count 5: Declaratory Judgment:   Because an actual controversy regarding the
5  parties' legal interests in the property exist, Plaintiff is entitled to declaratory judgment
6  establishing that because the Subject Instruments are void, Plaintiff does not owe any
7  payments under the Note and is therefore not in default, and consequently no Defendants
8  have legal claim to his property.  (FAC ¶¶ 92–95.)

9  Count 6: Accounting: Alternatively, Defendants should be required to provide an
10  accounting regarding what amount, if any, Plaintiff owes to the true holder of the Note.
11  (FAC ¶¶ 97–98.)

12  Count 7: Unfair Competition: Defendants' conduct constitutes deceptive and unfair
13  business practices that violate California public policy and California Business and
14  Professions Code § 17200.  (FAC ¶¶ 100–02.)

15  Plaintiff also asks the Court to enjoin Defendants "from conducting business to the
16  detriment of Mr. Hueso and others similarly situated" and from foreclosing on his home
17  or evicting him from the property (FAC ¶ 103); to order Defendants to disgorge any of
18  Plaintiff's money that they have wrongfully retained (*id.* ¶ 104), and for other damages,
19  including punitive damages.  (*See id.* ¶¶  77, 106–113.)

20  **LEGAL STANDARD**

21  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil
22  Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ.
23  P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The Court must accept
24  all factual allegations pleaded in the complaint as true and must construe them and draw
25  all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty*
26  *Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  To avoid a Rule 12(b)(6) dismissal,
27  a complaint need not contain detailed factual allegations, rather, it must plead "enough
28  facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (alteration in original)).  A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678.  Despite the deference the court must pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that defendant[] ha[s] violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

## DISCUSSION

## I.   <u>Count 1: Violations of RESPA</u>

Congress enacted RESPA to provide consumers "with greater and more timely information on the nature and costs" of the real estate settlement process and to protect them "from unnecessarily high settlement charges caused by certain abusive practices[.]" 12 U.S.C. § 2601(a).  The statute was then expanded to encompass loan servicing as well as the settlement process. *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing Pub. L. No. 101-165).  To this end, RESPA imposes certain duties on loan servicers regarding borrowers' accounts and in response to their inquiries. *See generally*, 12 U.S.C. § 2605.

Defendants move to dismiss Plaintiff's RESPA claim against Defendants Quality and SPS for failing to state that either Defendant violated the statute.  The Court addresses below the arguments as to each Defendant.

1

2

3    ## A.    Defendant Quality

4    Defendants contend that Quality, as trustee, is not subject to the statute.  (Mem. of

5    P. & A. in supp. of Mot. ("Mem. of P. & A.") at 7, ECF No. 39-1.)  Plaintiff counters that

6    because the FAC alleges that SPS retained Quality to collect on the Note, the Court can

7    reasonably infer that "at least some servicing obligations" were transferred from SPS to

8    Quality.  (Opp'n at 10 (citing FAC ¶ 52).)

9    RESPA defines "servicer" as "the person responsible for servicing of a loan."  12

10   U.S.C. § 2605(i)(2).  Servicing, in turn, is defined as

> receiving any scheduled periodic payments from a borrower pursuant to the
> terms of any loan, including amounts for escrow accounts described in section
> 2609 of this title, and making the payments of principal and interest and such
> other payments with respect to the amounts received from the borrower as
> may be required pursuant to the terms of the loan.

*Id.* § 2605(i)(3); *see also Medrano*, 704 F.3d at 667 (describing "servicer's role" as "receiving the borrower's payments and making payments to the borrower's creditors").

It is unclear whether trustees are *per se* excluded from RESPA's definition of "servicer."  *Compare Jacobson v. Balboa Arms Drive Trust No. 5402 HSBC Fin. Trustee*, No. 10–CV–2195–JM (RBB), 2011 WL 2784126, at *7 (S.D. Cal. Apr. 4, 2011) (holding that plain language of RESPA does not bind trustees) *with Goulatte v. CitiMortgage, Inc.*, No. EDCV 12-391 PSG  (SPx), 2013 WL 12142947, at *3 (C.D. Cal. Sept. 24, 2013) ("The Court is not persuaded that CR Title's status as the foreclosure trustee necessarily means that it could not also have been a servicer: one company could conceivably act in both roles.") (citing *Carter v. Deutsche Bank Nat'l Tr. Co.*, No. C09-3033 BZ, 2010 WL 1875718, at *1 (N.D. Cal. May 7, 2010)).  Even where trustees have not been categorically excluded, however, courts have still required plaintiffs to allege facts showing that the trustee assumed some servicing duties to bring the trustee within RESPA's definition of a loan servicer.  *See id.* at *3 (finding plaintiff inadequately pled a RESPA claim because he did not include factual allegations showing that defendant trustee was a "servicer"); *accord  Izenberg v. ETS Servs., LLC*, 589 F. Supp. 2d 1193, 1199 (C.D. Cal. 2008); *Lopez*

*v. GMAC Mortg. Corp.*, No. C 07-3911 CW, 2007 WL 3232448, at *3 (N.D. Cal. Nov. 1, 2007).

In the FAC, Plaintiff alleges that Defendant Quality substituted in as trustee, commenced foreclosure, and sent him a "Debt Validation Notice" on August 2, 2018 that stated Quality had been retained by SPS to collect on the Note.  (FAC ¶¶ 52, 57.)  The Court cannot reasonably infer that, as part of Quality's purported duty to collect past due payments, it was receiving scheduled periodic payments and applying them to the principal and interest on the loan such that it was "servicing" the loan.  *See Lopez*, 2007 WL 3232448, *3 (dismissing claim where plaintiff alleged only that defendant was the trustee of the disputed loan but not that it "ever received or was responsible for receiving periodic payments on the loan"); *see also Bryant v. Wells Fargo Bank, Nat. Ass'n*, 861 F. Supp. 2d 646, 660 (E.D.N.C. 2012) (declining to extend *Carter* to foreclosure trustee who "merely collected allegedly past due payments and attorney's fees from [p]laintiffs and forwarded the past due payments to Wells Fargo for application to [p]laintiffs' loan"); *Castrillo v. Am. Home Mortg. Servicing, Inc.*, No. CIV.A. 09-4369 R, 2010 WL 1424398, at *7 (E.D. La. Apr. 5, 2010) (finding trustee that did not receive periodic payments and make payments pursuant to loan terms before default was not a servicer).  Because Plaintiff has not sufficiently stated that Quality assumed duties that constitute "servicing" his loan under RESPA, Plaintiff cannot allege that any RESPA obligations attached to Quality as a "loan servicer" such that it can be held liable for violations of § 2605.  *See Castaneda v. Saxon Mortg. Servs., Inc.*, 687 F. Supp. 2d 1191, 1199 (E.D. Cal. 2009).

Even if the Court assumes *arguendo* that Quality is a loan servicer under RESPA, Plaintiff's allegations against Quality are still deficient because the FAC is devoid of any facts specifying what actions Quality took to violate RESPA.  Rather, it alleges only that SPS failed to respond to his QWRs and misapplied his payments to insurance and a tax escrow account  in violation of § 2605(e).  (FAC ¶¶ 36–41, 44–48.)  Plaintiff states no such claims against Quality.  Thus, even assuming Quality was a loan servicer under the statute, the FAC contains no facts to raise a colorable RESPA claim against it.  *See*

18cv1892

*Associated General Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) (in deciding a motion to dismiss, the court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged"); *see also Izenberg*, 589 F. Supp. 2d at 1199 ("Neither [defendant] nor the court is required to guess as to the manner in which [defendant's] conduct allegedly violated RESPA.").

The Court therefore **GRANTS** Defendants' Motion and dismisses Plaintiff's RESPA claim as to Quality, with leave to amend.

## B.    Defendant SPS

Plaintiff's RESPA claim against SPS concerns QWRs he sent to SPS seeking information about his loan account.  Plaintiff claims that in response, SPS "failed to undertake" actions required by § 2605 of RESPA, including investigating Plaintiff's account, making corrections as needed, and providing Plaintiff with a written explanation of its actions.  (FAC ¶¶ 61, 62.)  Plaintiff further claims that SPS "demonstrated a pattern or practice of noncompliance" with this RESPA provision and wrongfully applied his payments to force-placed insurance and a tax escrow account without authorization.  (*Id.* ¶¶ 63–65.)

Defendant SPS' response is limited to Plaintiff's QWR claim.  SPS argues that: (1) Plaintiff's letters to SPS are not QWRs covered by RESPA; (2) Plaintiff has not sufficiently alleged how SPS' responses were inadequate under the statute; and (3) Plaintiff has failed to allege that he suffered any damages as a result of the deficient responses.  (*Id.* at 8.)

### 1.    Qualified written requests

RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries, or "qualified written requests," from borrowers regarding the servicing of their loans.  12 U.S.C. § 2605(e)(1)(A), (e)(2).  A QWR is defined as

18cv1892

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—(i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

*Id.* § 2605(e)(1)(B).  If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a "pattern or practice of noncompliance," statutory damages of up to $1,000.  *Id.* § 2605(f).

### a.   *Plaintiff's letters were, in part, QWRs under RESPA*

Plaintiff alleges he sent eight letters to SPS informing it that it made errors in calculating and applying his payments and asking for 16 categories of information related to his account.  (FAC ¶¶ 41, 45–46.)  Defendants challenge whether these letters, as alleged, constitute QWRs because several categories of requested information related to the origination of the loan and not its servicing.  (Mem. of P. & A. at 8–9.)

The Ninth Circuit has held that "any request for information made with sufficient detail," including "[a]ny reasonably stated written request for account information[,]" constitutes a QWR.  *Medrano*, 704 F.3d at 666 (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011)).  More specifically, a communication from a borrower fits the parameters of a QWR

> as long as it (1) reasonably identifies the borrower's name and account, (2) either states the borrower's "reasons for the belief . . . that the account is in error" or "provides sufficient detail to the servicer regarding other information sought by the borrower," and (3) seeks "information relating to the servicing of [the] loan."

*Id.* (citing 12 U.S.C. § 2605(e)(1)(A)–(B)).  Regarding the third prong, the court clarified that inquiries about loan origination that seek to challenge a loan's validity or its terms do not seek "information relating to servicing," since loan origination precedes the servicer's role and, consequently, servicers are unlikely to have such information.  *Id.* at 666–67.

The Court agrees that some of the categories of requests allegedly made by Plaintiff in his communications with SPS relate to loan origination, not servicing. Categories requesting the original security instruments and Note,[2] MERS information, and inspection and appraisal reports for the property that is subject to the Note appear to be part of Plaintiff's effort to ascertain whether the Deed still exists or, as alleged by this lawsuit, has been destroyed. This forms the basis for Plaintiff's claim that his obligations under these instruments should be cancelled, which challenges the loan's validity. SPS had no duty under RESPA to respond to these requests. *See Junod v. Dream House Mortg. Co.*, No. CV 11–7035–ODW, 2012 WL 94355, at *3–4 (C.D. Cal. Jan. 5, 2012) (holding that copies of the promissory note and deed of trust and "a complete life of loan transactional history" are "not the type of information RESPA contemplates"). Thus, to the extent Plaintiff seeks to hold SPS liable under RESPA for failing to respond to these categories of information, Plaintiff's claim fails.

However, the remaining categories that request specific information about how payments were applied (audit history, payoff statement), charges to the account (itemized statement of advances and charges, authorization for fee charges), and the identity of the owner and servicer of Plaintiff's loan[3] fall squarely within the category of "information relating to loan servicing" and provided sufficient detail as to what information Plaintiff was seeking. *See* 12 U.S.C. § 2605(e)(1)(A); *see also id.* § 2605(k)(1)(C)–(D). Defendants appear to concede as much. (*See* Mem. of P. & A. at 9.) Thus, these allegations are sufficient to show that some of Plaintiff's correspondence with SPS triggered the servicer's duty to respond under RESPA.

b.   *SPS' responses were inadequate*

SPS next challenges whether Plaintiff has sufficiently alleged that its responses to the QWRs were inadequate. (Mem. of P. & A. at 9.)

---

[2] This includes Plaintiff's requests for information about who funded the underlying transaction, where the Note is trading, the custodian of the original Note, its proof of sale from lender to investors, and its current location. (FAC ¶ 46(a)–(h), (n).)

[3] *See* FAC ¶ 46(i)–(m), (o)–(p).

- 11 -

RESPA requires servicers to take specific actions in response to QWRs within 30 days of receiving them. 12 U.S.C. § 2605(e)(2). If necessary, the servicer is required to "make appropriate corrections" to a borrower's account and provide a written notification to the borrower that these corrections have been made. *Id.* § 2605(e)(2)(A). In addition, servicers are required, in response to all QWRs, to conduct investigations and provide borrowers with written explanations that either: (1) state why the servicer believes the borrower's account is accurate and therefore in no need of correction; or (2) provide information requested by the borrower or explain why the servicer cannot provide such information. *Id.* § 2605(e)(2)(B)(i), (C)(i). All written notifications under this provision are also required to provide the name and telephone number of a servicer's representative or employee who can provide further assistance. *Id.* § 2605(e)(2)(A), (B)(ii), (C)(ii).[4]

As stated previously, Plaintiff has alleged that he provided SPS with detailed requests about the servicing of his loan. (FAC ¶ 46.) Plaintiff alleges that SPS provided an incomplete response by producing only copies of the Note and Deed and "a limited breakdown of payments he made to [SPS]," while failing to provide an itemized statement, audit history, or any other proof that it was properly making payments to Plaintiff's creditors. (*Id.* ¶¶ 47–48; *see also* Opp'n at 9.) Further, Plaintiff states that he specifically told SPS that he believed it made errors in calculating and applying his payments, but that SPS took no corrective action and offered no explanation except to say that the owner of his Note was "Fannie Mae in its capacity as trustee"—a claim, Plaintiff alleges, not verified by Fannie Mae. (FAC ¶¶ 41–43.)

Plaintiff has adequately stated that SPS' response did not comport with RESPA's requirements. SPS was either required to provide all responsive information in its possession or explain to Plaintiff, in writing, why certain information was unavailable or could not be obtained by SPS. Plaintiff's allegation that SPS provided only some

---

[4] Servicers are also expressly prohibited from "fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

documents with no explanation as to why other requested records were omitted is sufficient to state that SPS did not comply with RESPA. *See Stephenson v. Chase Home Fin. LLC*, No. 10-CV-2639-L WMC, 2011 WL 2006117, at *2–3 (S.D. Cal. May 23, 2011) (finding plaintiff's interpretation of servicer's response as incomplete was "reasonable" and sufficient to state that servicer did not comply with § 2605(e)(2)(C)). Similarly, regarding the alleged error on Plaintiff's account, SPS was either required to correct it (and inform Plaintiff of the correction) or explain why no correction was needed. Plaintiff's claim that SPS provided no explanation whatsoever is also sufficient, therefore, to state a claim for a RESPA violation under this provision.

The Court finds that Plaintiff sufficiently alleges that SPS did not take the actions required of it under § 2605(e) in response to Plaintiff's QWRs.

### c.   *Plaintiff has not alleged damages*

Defendants also move to dismiss on the ground that Plaintiff has not alleged that he suffered any actual damages as a result of SPS' alleged failure to respond to his requests for information. (Mem. of P. & A. at 9–10.) In his Opposition, Plaintiff relies on his request for attorneys' fees to satisfy the damages allegation for his RESPA claim. (Opp'n at 9–10.)

"RESPA . . . authorizes 'actual damages to the borrower *as a result of* the failure [to comply with RESPA requirements].'" *Lal v. American Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (citing 12 U.S.C. § 2605(f)(1)(A)). Accordingly, "a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v. United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (citing cases). A plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to QWRs has therefore been found to be fatal to the claim. *See*, *Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 795 (E.D. Cal. 2010).

Plaintiff states that SPS "wrongfully declared [him] to be in default, damaging his credit score and charging unearned interest and penalties on the balance it claims he owes."

(FAC ¶ 65.)  However, these alleged harms do not flow from SPS' purported failure to respond to the QWRs.  Plaintiff's default was caused by his decision to hold his payments "in abeyance."  (FAC ¶ 48.)  Further, to the extent Plaintiff alleges that SPS' mishandling of his payments led to unlawful charges to his accounts, these damages stem from the SPS' improper servicing of his loan, not from its failure to respond to Plaintiff's QWRs.  *See Collier v. Wells Fargo Home Mortg.*, No. 04–086, 2006 WL 1464170 at * 3 (N.D. Tex. May 26, 2006) (granting summary judgment on § 2605(e) claim where plaintiffs alleged damages caused by the improper servicing of the mortgage, not by defendant's failure to respond to QWRs).

Plaintiff instead contends that his request for attorneys' fees adequately alleges damages.  (Opp'n at 9–10.)  This argument fails as a matter of law.  Courts have not typically considered attorneys' fees to be "actual damages" in this context.  *See, e.g.*, *Saulsbury v. Bank of Am.*, No. CV 11-00138 JMS/KSC, 2011 WL 13228201, at *4 (D. Haw. Sept. 28, 2011); *Luciw v. Bank of Am., N.A.*, No. 5:10-CV-02779-JF/HRL, 2010 WL 3958715, at *3 (N.D. Cal. Oct. 7, 2010) (citing cases); *see also Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010) (finding the costs of filing suit were not actual damages for purposes of RESPA because "the loss alleged must be related to the RESPA violation itself").  Consistent with this understanding, RESPA separately includes attorneys' fees as a recoverable cost.  *See* 12 U.S.C. § 2605(f)(3).  As such, in the RESPA context, a request for attorneys' fees for the lawsuit raising the RESPA claim does not suffice to state damages.

Plaintiffs can also recover statutory damages under RESPA if they plead some pattern or practice of noncompliance with the statute.  12 U.S.C. § 2605(f)(1)(B).  The FAC states that SPS has engaged in a pattern or practice of violating RESPA but provides no factual support for this claim.  This is also insufficient to plead damages.  *See Lal*, 680 F. Supp. 2d at 1223 (dismissing conclusory pattern or practice claim because it was "a legal conclusion couched as a factual allegation").

18cv1892

Finding no facts in the FAC supporting that Plaintiff incurred damages flowing from SPS' alleged failure to respond to Plaintiff's QWRs, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's RESPA claim under 12 U.S.C. § 2605(e) as to SPS, with leave to amend.

2.   Plaintiff's Other RESPA claims

As Plaintiff points out, Defendants' arguments in favor of dismissing Plaintiff's RESPA claim address only his claim based on the QWRs, and not Defendants' alleged misapplication of his payments to a tax escrow account and to force-placed insurance. (Opp'n at 6–7.)  The Court finds it necessary to evaluate the sufficiency of these claims to determine whether a federal question claim under RESPA survives dismissal such that the Court should exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See Bloom v. Martin*, 865 F. Supp. 1377, 1387 (N.D. Cal. 1994) (citing 28 U.S.C. § 1367(c)(3)) (declining to assert supplemental jurisdiction over remaining state law claims where court dismissed plaintiffs' RESPA claims, which were "the sole ostensible basis for jurisdiction in this Court"), *aff'd*, 77 F.3d 318 (9th Cir. 1996).

i.   *Tax Escrow Account*

Plaintiff alleges that SPS misapplied funds that it claimed were being paid toward Plaintiff's taxes on the property.  (FAC ¶ 33(a).)  Plaintiff states that because he "had personally paid his taxes" and did not receive notice from a taxing authority that SPS paid his taxes or that Plaintiff had overpaid them, the Court can infer that SPS was in fact not using these funds to pay taxes on the property. (*Id.*)

RESPA states that if the terms of a mortgage require borrowers to make payments to the servicer for deposit into an escrow account for the payment of taxes, insurance premiums, and other charges, servicers shall make such payments for this purpose.  12 U.S.C. § 2605(g).  The terms of the Deed provide that Plaintiff must pay funds for escrow items—taxes and assessments, leasehold payments, and insurance premiums—to be deposited in an insured account and applied to the aforementioned escrow items by the servicer.  (Deed at 5.)

Plaintiff claims SPS violated this provision by falsely claiming that his payments were applied to property taxes. (FAC ¶ 65.) Plaintiff does not base this claim on the fact that he did not receive escrow account statements or that such statements revealed that his funds were not being properly applied to his property taxes. *See* 12 U.S.C. §§ 2605(g), 2605(i)(3), 2609(c)–(d) (requiring a servicer to make payments to an escrow account as required by the terms of a mortgage, detailing what information a servicer must furnish relating in escrow account statements, and establishing the corresponding penalties for failing to do so). Rather, he relies on the vague and conclusory assertion that he would have received some other, unidentified notice "from a taxing authority" if SPS was, in fact, paying taxes on the property. The Court finds this allegation too speculative to permit a plausible inference that SPS was misapplying these funds by failing to pay Plaintiff's property taxes. *See Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). Without additional factual matter to support this allegation, Plaintiff cannot make out a colorable claim that SPS violated any provisions of RESPA relating to tax escrow accounts.

### ii. Force-placed insurance

Plaintiff also alleges that SPS unlawfully imposed force-placed insurance on the property and wrongfully charged him for it in violation of RESPA. (FAC ¶ 63.) Plaintiff specifically states that SPS informed him that his loan payments were being applied to "force-placed insurance" even though he maintained insurance on the property himself and had never received notice that SPS did not have proof of this coverage and would therefore retain its own policy. (*Id.* ¶¶ 33, 33(b).) Plaintiff also alleges that SPS did not notify him that his insurance had terminated and did not reimburse him for the duplicate payments. (*Id.* ¶ 33(c).)

Force-placed insurance is the hazard insurance coverage obtained by the servicer when the borrower fails to maintain or renew such insurance on a property as required by

the terms of the loan.  12 U.S.C. § 2605(k)(2).  Under RESPA, servicers are prohibited from obtaining such insurance "unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance." *Id.* § 2605(k)(1).  The statute further establishes that "a reasonable basis" for force-placed insurance exists only if:

> (A) the servicer has sent, by first-class mail, a written notice to the borrower containing--
>
> > (i) a reminder of the borrower's obligation to maintain hazard insurance on the property securing the federally related mortgage;
> >
> > (ii) a statement that the servicer does not have evidence of insurance coverage of such property;
> >
> > (iii) a clear and conspicuous statement of the procedures by which the borrower may demonstrate that the borrower already has insurance coverage; and
> >
> > (iv) a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not provide such demonstration of the borrower's existing coverage in a timely manner;
>
> (B) the servicer has sent, by first-class mail, a second written notice, at least 30 days after the mailing of the notice under subparagraph (A) that contains all the information described in each clause of such subparagraph; and
>
> (C) the servicer has not received from the borrower any demonstration of hazard insurance coverage for the property securing the mortgage by the end of the 15-day period beginning on the date the notice under subparagraph (B) was sent by the servicer.

*Id.* § 2605(l)(1).  Further, servicers are required to terminate a force-placed insurance policy within 15 days of receipt of proof of a borrower's existing coverage and refund to the borrower all force-placed insurance premiums paid and related fees charged during the period of overlapping coverage.  *Id.* § 2605(l)(3)(B).

Defendants have not moved to dismiss this RESPA claim and thus provide no explanation as to how Plaintiff's allegations under this RESPA provision are deficient.  In any event, the Court finds Plaintiff has adequately stated violations of § 2605(k) and (l).  Plaintiff claims he did not receive either notice required by subsections (A) and (B).  The Court can reasonably infer from this alleged omission that SPS acquired force-placed insurance without first complying with RESPA's notification requirements, and thus had no reasonable basis for believing that Plaintiff had not maintained this insurance himself.  *See* 12 U.S.C. § 2605(k)(1).  Further, Plaintiff's allegations that SPS failed to reimburse him for the force-placed insurance premium payments and that he is being charged "unearned interest and penalties on the balance" of his loan (FAC ¶¶ 33(c), 65) adequately plead a pecuniary loss flowing from this violation that suffices to state damages.  *See Craig v. Cap. One, N.A.*, No. CV 17-3788 DMG (AJWx), 2018 WL 5857987, at *5 (C.D. Cal. Apr. 10, 2018) (finding plaintiff's allegation that servicer "failed to refund all force-placed insurance premium charges and related fees" sufficed to state damages resulting from the alleged violation of RESPA's force-placed insurance provision).

Therefore, this RESPA claim regarding force-placed insurance remains actionable.  The Court has original jurisdiction over this claim and will thus evaluate whether Plaintiff's remaining pendent state law claims have been sufficiently pled.  *See* 28 U.S.C. § 1367(a), (c)(3).

## II.   Count 2: Cancellation of Instrument

Plaintiff seeks cancellation of the Note and Deed of Trust, as well as the Assignment, Substitution of Trustee, and Notice of Default (the "Subject Instruments").  (FAC ¶ 67.)  He bases this claim on several grounds: (1) the Note was destroyed by Defendant Credit Suisse and therefore extinguished (*id.* ¶¶ 49, 69–72); (2) MERS' execution of the assignment to SPS was invalid because it was not qualified to do business in California at the time (*id.* ¶¶ 17–21, 55, 73); (3) the substitution of Quality as trustee is voidable because SPS has no estate in Plaintiff's property to transfer to Quality

18cv1892

1  (*id.* ¶ 74); and (4) based on the foregoing, neither SPS nor Quality had legal authorization

2  to file the Notice of Default (*id.* ¶ 75).

3        Defendants raise several counterarguments, but neither they nor Plaintiff address

4  the Court's previous conclusions on this very issue in its Order Denying Plaintiff's Motion

5  for Preliminary Injunction and Motion for Temporary Restraining Order. *See Hueso v.*

6  *Select Portfolio Servicing, Inc.*, No. 18-CV-1892-BAS-WVG, 2019 WL 3459013 (S.D.

7  Cal. July 31, 2019).[5]   The Court, however, finds that its legal conclusions in that order

8  applicable to the determination of Plaintiff's claim at the 12(b)(6) stage and will abide by

9  them here. *See Ranchers Cattlemen Action Legal Fund United Stockgrowers of Am. v.*

10 *U.S. Dep't of Agr.*, 499 F.3d 1108, 1114 (9th Cir. 2007) (holding that while "the general

11 rule" is that "decisions at the preliminary injunction phase do not constitute the law of the

12 case," "conclusions on pure issues of law . . . are binding."); *see also Torres v. Milusnic*,

13 No. CV 20-4450-CBM-PVC(x), 2020 WL 8611035, at *2 (C.D. Cal. Sept. 18, 2020).

14       Preliminarily, as stated in the Court's previous order, Plaintiff is time-barred from

15 proceeding with this claim. *See id.* at *4 (noting that actions for cancellation of an

16 instrument are subject to a four-year limitations period under Cal. Code Civ. P. § 343)

17 (citing cases).   The Credit Suisse Note and the Deed of Trust naming MERS as a

18 beneficiary were entered into in 2006; Plaintiff did not file the instant lawsuit until over

19 ten years later in 2018.  (*See* Compl., ECF No. 1; *see also* Exs. A, B to FAC.)  Plaintiff

20 cannot seek cancellation of these documents at this late stage. *See Dela Cruz v. Select*

21 *Portfolio Servicing, Inc.*, No. 19-CV-00283-LHK, 2019 WL 2299857, at *9 (N.D. Cal.

22 May 30, 2019).

23       In any case, regarding Plaintiff's first contention, even a timely allegation that the

24 Note was "destroyed" because Defendants have not been able to produce it fails as a matter

25 of law, since they do not require physical possession of the Note to foreclose on Plaintiff's

26 property. *See Debrunner v. Deutsche Bank Nat'l Tr. Co.*, 204 Cal. App. 4th 433, 440

27

28 ――――――――――――
          [5] The Order can be found on the docket as ECF No. 24.

(2012); *Christopher v. First Franklin Fin. Corp.*, No. 10CV17 DMS (CAB), 2010 WL 1780077, at *2 (S.D. Cal. Apr. 30, 2010) (dismissing claims to set aside non-judicial foreclosure sale and cancel trustee's deed upon sale where claims were predicated on alleged failure to possess promissory note).

Second, Plaintiff's challenge to MERS' assignment to SPS also lacks merit. First, as pointed out in the Court's previous order, Plaintiff concedes that MERS' ability to engage in business in California was restored when it qualified as a successor entity in 2010. (FAC ¶ 18.) MERS' assignment of rights to SPS occurred seven years later. (*Id.* ¶ 50.) Thus, this claim is deficient on its face, as MERS did not lack authority to assign rights to SPS when it was no longer suspended. *See Perlas v. Mortgage Elec. Registration Systems, Inc.*, No. CV 09–4500 CRB, 2010 WL 3079262, at *7 (N.D. Cal. Aug. 6, 2010) (citing *United Medical Mgmt. Ltd. v. Gatto*, 49 Cal. App. 4th 1732, 1741 (1996)) ("California courts have held that an unregistered corporation, upon registering, is 'restored to full legal competency and has its prior transactions given full effect.'"); *see also Adam v. Mortg. Elec. Registration Sys., Inc.*, CV 10-7886 PSG (PLAx), 2011 WL 63651, *3 (C.D. Cal. Jan. 4, 2011) (rejecting challenge to 2006 loan listing MERS as a beneficiary where MERS successfully registered with the California Secretary of State in 2010).

Third, and as previously noted by the Court, the language in the Deed defeats the claim that MERS lacked the authority to act as a nominal beneficiary. The Deed states that the

> [b]orrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

(Deed at 3.) California courts have held that this same language confers MERS with the right to exercise all interests of the beneficiary, such as the right to foreclose and assign both the Deed and Note. *See Enos v. U.S. Bank, N.A.*, No. 18-cv-06101-MMC, 2019 WL 1411221, at *3 (N.D. Cal. Mar. 28, 2019) (quoting *Herrera v. Fed. Nat'l Mortg. Ass'n*, 205 Cal. App. 4th 1495, 1505 (2012)).[6]

Plaintiff's claims about the invalidity of SPS' substitution of Quality and the subsequent Notice of Default follow from the alleged unlawfulness of the MERS assignment. Therefore, because the Court finds the MERS' claim is not tenable, Plaintiff also cannot maintain these derivative claims. *See Koenig v. Bank of Am.*, N.A., No. 1:13-CV-0693 AWI BAM, 2016 WL 8731110, at *3 (E.D. Cal. Mar. 18, 2016) ("'[A] trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights.'" (quoting *Siliga v. Mortg. Elec. Registration Sys., Inc.*, 219 Cal. App. 4th 75, 89 (2013), *overruled on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Ca. 4th 919, 939 n.13 (2016))).

No arguments have been raised in the renewed dismissal briefings that alters the Court's previous conclusions of law regarding Plaintiff's cancellation of instrument claim. Thus, the Court **GRANTS** Defendants' Motion as to this claim and, finding further amendment would be futile, dismisses it with prejudice and without leave to amend. *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1530 (9th Cir. 1995) ("Denial of leave to amend is not an abuse of discretion where the district court could reasonably conclude that further amendment would be futile.").

---

[6] Moreover, Plaintiff concedes that Quality was the entity to which he made payments and that commenced foreclosure—not MERS—and that he has stopped making payments on the loan. (*See* FAC ¶¶ 2, 10, 28, 31–31, 48, 52.) Thus, even if MERS was a "sham beneficiary," "the lenders would still be entitled to repayment of the loans and would be the proper parties to initiate foreclosure after" default. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1038 (9th Cir. 2011).

### III.   Count 3: Receiving Stolen Property

Defendants argue that the claim for receipt of stolen property must fail because Plaintiff alleged that he voluntarily tendered payments due under the Note, and as such they cannot constitute "stolen" property. (Mem. of P. & A. at 13.)  Plaintiff counters that his allegation that SPS fraudulently misappropriated his payments is sufficient to satisfy the element of theft for purposes of the statute.  (Opp'n at 15.)

California Penal Code § 496(c) authorizes persons injured by the receipt of stolen property to bring a civil action for three times the amount of actual damages, as well as attorneys' fees and costs.  "A criminal conviction is not a prerequisite to recovery of treble damages." *Switzer v. Wood*, 35 Cal. App. 5th 116, 126 (2019), *as modified* (May 10, 2019), *review denied* (Aug. 14, 2019).  Rather, "[a] violation may be found to have occurred if the person engaged in the conduct described in the statute." *Id.*  To state a violation of the statute, a plaintiff must plead three elements: "(a) the property was stolen, and (b) the defendant was in possession of it, (c) knowing it was stolen." *Verdugo-Gonzalez v. Holder*, 581 F.3d 1059, 1061 (9th Cir. 2009) (citing *People v. Anderson*, 210 Cal. App. 3d 414, 420 (1989)).  Defendants challenge whether Plaintiff has sufficiently stated the first element of the offense.

Neither state nor federal courts agree on what conduct is captured by this element. Some courts have understood § 496(a)'s "plain meaning" to extend its reach to include property obtained through false pretense, misrepresentation, or misappropriation. *See Bell v. Feibush*, 212 Cal. App. 4th 1041, 1048 (2013) (finding that § 496(a) applies to anything subject to theft as defined by Cal. Penal Code § 484(a))[7]; *see also Allure Labs, Inc. v.*

_____

[7] The California legislature has "consolidated the crimes of larceny, embezzlement, and theft by false pretense in Penal Code section 484, subdivision (a), under the single term 'theft.'" *Switzer*, 35 Cal. App. 5th at 126.  This provision states:

> Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his or her wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby

- 22 -

*Markushevska*, 606 B.R. 51, 59  (N.D. Cal. 2019) (finding defendant's embezzlement of money satisfied § 496's requirement that the property was stolen); *Worldwide Travel*, 2016 WL 1241026, at *8 (holding that plaintiff sufficiently alleged a claim under § 496 by alleging facts establishing fraud, false pretense, and fraudulent misrepresentation). Because an element of theft by false pretense involves the owner of the property voluntarily parting with it due to the influence of a defendant's misrepresentations, it follows that "theft by false pretenses may be accomplished with the owners' consent." *Worldwide Travel*, 2016 WL 1241026, at *8 (quoting *Carrillo-Jaime v. Holder*, 572 F.3d 747, 752 (9th Cir. 2009), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013)).

However, other federal and state decisions have held that for property to be "stolen" under § 496(a), the property "must already have the character of having been stolen" when it comes into a defendant's possession.  *See Grouse River Outfitters Ltd. v. NetSuite, Inc.*, 2016 WL 5930273, at *14 (N.D. Cal. Oct. 12, 2016) (finding plaintiff's money "was not 'stolen' when [defendant] allegedly defrauded [plaintiff] of it"); *cf. Lacagnina v. Comprehend Sys., Inc.*, 25 Cal. App. 5th 955, 971 (2018), *as modified* (Aug. 14, 2018). The Northern District in *Grouse*, also using a plain meaning approach, found that the tense of the statutory language supported this view.  *Grouse*, 2016 WL 5930273, at *14 (noting that the first sentence of § 496(a) refers to "property that *has been stolen* or that *has been obtained* in any manner constituting theft").   Further, it found that without this requirement, the plaintiff would be able to "leverag[e] [the] alleged fraud into a damage-trebling § 496(a) violation[,]" which would run afoul of the "dual civil liability bar" by holding a defendant liable for two civil infractions based on the same conduct.[8]  *See id.* at

---

fraudulently gets or obtains possession of money, or property or obtains the labor or service of another, is guilty of theft.

Cal. Penal Code § 484(a).

[8] This concept is adapted from a similar prohibition on dual criminal liability under this statute, which permits individuals responsible for the actual theft of a subject property to be subject to criminal liability under the statute only if they are not also convicted for theft of the same property.  Cal. Penal Code § 496(a); *see also Worldwide Travel, Inc. v. Travelmate US, Inc.*, No. 14-CV-00155-BAS (DHB),

*15 (citing *Bell*, 12 Cal. App. 4th at 1049 (applying dual-liability bar in criminal context to civil liability under § 496(c)); *but see Switzer*, 35 Cal. App. 5th at 125–132 (finding the plain meaning of § 496 "makes no exception for cases involving preexisting business relationships" and therefore treble damages could be applied even where traditional, limited remedies for breach of contract, fraud, and conversion were available); *Worldwide Travel*, 2016 WL 1241026, at *8 (finding claim of civil fraud alone sufficiently stated claim for liability under § 496(c)).

To avoid dual liability, some courts have required "small additional conduct" such as concealment or withholding—rather than just receipt of stolen goods—to establish a violation of the statute.  *See Grouse*, 2016 WL 5930273, at *14 (citing *Bell*, 12 Cal. App. 4th at 1049) (dismissing § 496(c) claim where no additional withholding or concealment was alleged); *Agape Family Worship Center, Inc. v. Gridiron*, 2018 WL 2540274 (C.D. Cal. May 30, 2018) (dismissing § 496 claim on summary judgment where plaintiff presented no evidence of withholding to avoid dual liability bar); *but see Allure Labs*, 606 B.R. at 62–63 (stating that a violation of § 496(a) requires only that a defendant receive stolen property and "not have also concealed, sold, or withheld the stolen property") (citing *People v. Brown*, 32 Cal. App. 5th 736, 732 (2019)).

Last year, the California Second District Court of Appeal further limited the scope of § 496 to exclude its application to any traditional tort claims, based on a different set of rationales.  *See Siry Inv., L.P. v. Farkhondehpour*, 45 Cal. App. 5th 1098, 1133–37 (2020), *as modified on denial of reh'g* (Mar. 23, 2020).  The court held that applying § 496 to cases involving any type of theft—including the traditional contract and fraud at issue—would, in direct contravention of California Supreme Court precedent, presume that the legislature instituted "significant change through silence." *Id.* at 1135 (citations omitted). These significant changes include dramatically expanding the traditional tort remedy from actual damages to treble damages and "effectively repeal[ing]" the punitive damages

---

2016 WL 1241026, at *7 (S.D. Cal. Mar. 30, 2016) (citing *People v. Allen*, 21 Cal. 4th 846, 854–58 (1999) (citation omitted)).

statute by allowing plaintiffs to recover treble damages by a preponderance of the evidence. *Id.* at 1135–36 (citing Cal. Civ. Code § 3294(a) (requiring plaintiffs to show "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice" to obtain punitive damages)). Further, the court found that this expansive interpretation of § 496 did not align with the legislative purpose of "drying up the market for stolen goods" and was inconsistent with the legislature's express creation of the "extraordinary remedy" of treble damages in other contexts. *Id.* at 1136–37.[9]

Since *Siry*, federal district courts have taken different approaches to § 496's applications depending on the context. *Compare Instant Brands, Inc. v. DSV Sols., Inc.*, No. EDCV 20-399 JGB (KKx), 2020 WL 5947914 (C.D. Cal. Aug. 20, 2020) (relying on citing *Grouse*, *Lacagnina*, *Siry* to dismiss a § 496 claim where the plaintiff raised traditional tort claims (negligence, breach of contract, conversion)) *with Otte v. Naviscent, LLC*, No. 19-CV-07898-CRB, 2021 WL 66306 (N.D. Cal. Jan. 7, 2021) (upholding attorney's fees award under § 496 where claim was brought pursuant to the crime of embezzlement, not a tort, and therefore *Siry*'s concerns about "upending California tort law" were not applicable).

The Court has not found any decisions addressing the application of § 496 in the RESPA context and the parties offer no argument regarding the appropriate interpretation of the conflicting case law. It is true, like in *Otte*, that Plaintiff here does not allege any traditional tort claims in this case that invoked the concerns about dual civil liability that has animated other courts. *Cf. Grouse*, 2016 WL 5930273, at *1 (claims for fraudulent misrepresentation and fraud in the inducement); *Agape*, 2018 WL 2540274, at *1 (fraud

---

[9] The California Supreme Court granted a petition for review in *Siry* on July 8, 2020. *See Siry Investment v. Farkhondehpour*, 468 P.3d 701, 265 Cal. Rptr. 3d 414 (2020). An issue presented on review is whether a trial court may award treble damages and attorney fees under § 496(c) in a case involving fraud. *See* Appellate Courts Case Information, Case Summary for Case No. S262081, accessed at https://appellatecases.courtinfo.ca.gov/search.cfm?dist=0 (March 17, 2021). The appeal is pending. If the California Supreme Court's ultimate decision is inconsistent with this Court's understanding of § 496 as adopted in this Order, the Court will entertain a motion for reconsideration.

claim).   Nonetheless, the Court finds the more limited view of § 496's scope more persuasive in the context of this case for the following reasons.

First, the Court finds the plain meaning argument has force.  Plaintiff here claims that through an act of fraud alone, Defendants are now in receipt of stolen property. However, the statute clearly requires that property received by a person or entity subject to the statute either "has been stolen" or "has been obtained in any manner constituting theft . . . ."  Cal. Pen. Code § 496(a).  It follows from this language that "when the property in question comes into the defendant's hands, it must already have the character of having been stolen."  *Grouse*, 2016 WL 5930273, at *14.   The allegation that SPS misapplied Plaintiff's payments certainly raises concerns about wrongful conduct, but the payments were not "stolen" when SPS misapplied them.  *See Lacagnina*, 25 Cal. App. 5th at 971 ("Lacagnina's labor was not 'stolen' *at the time* Comprehend allegedly defrauded him out of the disputed compensation.") (emphasis in original).   Up to the point of the alleged misapplication, they were merely part of a lawful transaction carried out according to the terms of the Deed and subsequent Assignment.[10]   The Court therefore does not find that the unambiguous language of § 496 captures this conduct.  *See Wells v. One2One Learning Found.*, 39 Cal. 4th 1164, 1190 (2006) ("If the words themselves are not ambiguous, we

---

[10] Further, even the cases that support the more expansive view of § 496 still found, under the facts of those cases, that the plaintiffs had alleged additional conduct beyond receipt to support their § 496 claim.  *See Allure Labs*, 606 B.R. at 60 (finding concealment where defendant took several additional steps, independent of the initial theft, to avoid disclosing property's whereabouts to plaintiff); *Worldwide Travel*, 2016 WL 1241026, at *8 (finding allegations of a § 496 claim sufficient where plaintiffs alleged that "[d]efendants knowingly received, *concealed, and withheld* their property, which had been obtained by means of false or fraudulent representations or pretense") (emphasis added); *Bell*, 212 Cal. App. 4th at 1049 ("The evidence established that [defendant] violated section 496(a) not only by receiving property from [plaintiff] by false pretense, but also by withholding that property when she asked for it back.").

Here, Plaintiff does not allege that Defendants took independent steps to conceal his money or that Defendants refused to return it  after he asked for it back; in fact, he states that the instant action serves as his demand for the return of his property.  (*See* FAC ¶ 89 ("Defendants have refunded no portion of the money to Mr. Hueso.  *By this Complaint*, Mr. Hueso demands the return of his money and property.") (emphasis added)).

presume the Legislature meant what it said, and the statute's plain meaning governs."), *as modified* (Oct. 25, 2006).

And even if the Court found that the language allowed for "more than one reasonable construction," the Court finds that broadly interpreting § 496 would lead to incongruous consequences in this case. *See id.* ("[I]n cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy."). Although Plaintiff characterizes SPS' underlying actions as "fraudulent misappropriation," he does not include a claim for any type of fraud. (Opp'n at 15.) This simultaneously circumvents the dual civil liability bar intended to prevent excess damages while putting Plaintiff in the position of seeking treble damages rather than the ordinary tort damages that would be available for a standard fraud claim. *See Siry*, 45 Cal. App. 5th at 1135 ("the damages remedy for these torts has been limited to the amount of damages actually caused by the fraud, misrepresentation, conversion or breach of fiduciary duty").

Lastly, in the context of this case, Plaintiff couches this fraudulent misappropriation claim as a violation of RESPA, which itself limits relief to actual damages—similar to traditional tort remedies—plus statutory damages of $1,000 in certain contexts. 12 U.S.C. § 2605(f). Moreover, the Court has similar concerns about imposing treble damages via § 496 on what essentially amounts to a fraud claim considering Plaintiff has also requested punitive damages and restitution (FAC ¶¶ 77, 104). *See Siry*, 45 Cal. App. 5th at 1136; *see also Agape*, 2018 WL 2540274, at *1, *5 (finding dual liability bar "particularly applicable" where the defendant had been criminally convicted of a § 496(a) violation and was ordered to pay restitution for amount stolen).

Based on the foregoing, the Court finds that Plaintiff cannot allege a claim under § 496 because his loan payments were not "stolen" at the time of the alleged misappropriation. Because Plaintiff's claim fails as a matter of law, the Court **GRANTS**

18cv1892

1   Defendants' Motion as to this claim and **DISMISSES** it with prejudice and without leave

2   to amend.  *See Allwaste*, 65 F.3d at 1530.[11]

3   **IV.   Count 4: Common Count**

4       As to Plaintiff's "common count" claim, Defendants argue that it is not actionable

5   because Plaintiff has not pled the necessary legal foundation to create an obligation from

6   Defendants to Plaintiff.  Defendants again rely on the argument that Plaintiff's voluntary

7   payments do not constitute stolen property, and as such, there is no legal basis for this

8   claim as to SPS.  (Mot. at 13–14.)  Further, regarding Quality, Defendants claim Plaintiff

9   has alleged no facts to show that Quality, as trustee, was in possession of money to be

10  returned to Plaintiff.  (*Id.* at 14.)   Plaintiff opposes, claiming that the allegations that

11  Defendants have his money in their possession and did not use it for his benefit, as

12  required, adequately pleads a claim under common count.  (Opp'n at 16.)

13      A common count "lies wherever one person has received money which belongs to

14  another, and which in equity and good conscience should be paid over to the latter."

15  *Gutierrez v. Girardi*, 194 Cal. App. 4th 925, 937 (2011); *McBride v. Boughton*, 123 Cal.

16  App. 4th 379, 394 (2004) (common count "is a simplified form of pleading normally used

17  to aver the existence of various forms of monetary indebtedness, including that arising

18  from an alleged duty to make restitution").  To state a claim for common count for money

19  had and received, a plaintiff must allege only that a defendant received money intended

20  for the benefit of the plaintiff, that the money was not used for the plaintiff's benefit, and

21  that the defendant has not given the money to the plaintiff.  *Avidor v. Sutter's Place, Inc.*,

22  212 Cal. App. 4th 1439, 1454 (2013).

23      Even without a viable claim for receipt of stolen goods, Plaintiff has sufficiently

24  pled a claim for common count because he stated a colorable claim under RESPA that SPS

25  misapplied his money to a force-placed insurance policy.  *See McBride*, 123 Cal. App. 4th

26  at 394–95 (holding that common count will "stand or fall" with cause of action seeking

27

28
[11] *But see supra*, footnote 12.

1   the same recovery).  This claim states that Plaintiff made payments to SPS, as the servicer

2   of his loan for the purpose of paying the balance of the loan for his benefit.  (*See* FAC ¶

3   31.)  He has also stated that SPS misapplied this money to force-placed insurance instead

4   of to the loan's balance.  (*See id.* ¶ 33; *see also supra*, Section I.B.3.)  And lastly, he alleges

5   that SPS has not returned this money to Plaintiff.  (*See id.* ¶¶ 89–90.)  This is sufficient to

6   state a claim against SPS for common count.

7        However, as to Quality, Plaintiff alleges it was retained to collect past due payments

8   on the loan in 2018 but also alleges he has been holding his loan payments in abeyance

9   from an unspecified date.  (FAC ¶¶ 48, 57.)  There are no facts plausibly stating that

10  Quality actually collected Plaintiff's past due payments—which would have included

11  Plaintiff's duplicative premium payments—such that it now possesses Plaintiff's money.

12       Thus, the Court finds Plaintiff's common count against SPS withstands a 12(b)(6)

13  challenge "as an alternative way of seeking the same recovery demanded" in his RESPA

14  cause of action.  *See McBride*, 123 Cal. App. 4th at 394–95.  However, Plaintiff's common

15  count against Quality fails.  Therefore, the Court **DENIES** Defendants' Motion to Dismiss

16  this claim as to SPS, **GRANTS** it as to Quality, and **DISMISSES** it as to Quality with

17  leave to amend.  *See Allwaste*, 65 F.3d at 1530.

18  **V.    Count 5: Declaratory Judgment**

19       "Declaratory relief is an equitable remedy distinctive in that it allows adjudication

20  of rights and obligations on disputes regardless of whether claims for damages or

21  injunction have arisen."  *In re Singh*, 457 B.R. 790, 798 (Bankr. E.D. Cal. 2011).  The

22  Declaratory Judgment Act, which permits federal courts to declare parties' "rights and

23  legal relations," 28 U.S.C. § 2201, "brings to the present a litigable controversy, which

24  otherwise might only b[e] tried in the future."  *Societe de Conditionnement en Aluminium

25  v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981).  However, under the Act, a court

26  may only grant declaratory relief when there is an actual controversy within its

27  jurisdiction.  *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994); *see Hunter*,

28  655 F.2d at 943 (quoting *Japan Gas Lighter Assoc. v. Ronson Corp.*, 257 F. Supp. 219,

237 (D.N.J. 1966)) (declaratory judgment is permitted "once the adverse positions have crystallized and the conflict of interests is real and immediate"). The controversy must be definite and concrete. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937).

Plaintiff requests a declaratory judgment asserting his rights to his property. He claims an "actual controversy" exists for purposes of this relief because the parties dispute whether: (1) Defendants "possess a right, title, interest, or estate" in his home "by virtue of the Subject Instruments"; (2) Plaintiff defaulted on the property, entitling Defendants to foreclose; and (3) "they are owed payments under the terms of the Credit Suisse Note[.]" (FAC ¶ 92(a)–(c).) Defendants argue Plaintiff has alleged no facts demonstrating an "actual controversy" exists to justify declaratory relief because he has admitted that he executed the Note, made payments to the servicer (SPS), and then stopped making payments. (Mem. of P. & A. at 14–15.)

Plaintiff has failed to state a claim for declaratory relief. Plaintiff's first proffered rationale for declaratory relief appears to rely wholly on the merits of his claim for cancellation of the "Subject Instruments."[12] For the reasons explained in Section II, *supra*, the Court finds the cancellation of instrument claim fatally deficient. Thus, Plaintiff's first basis for declaratory relief is insufficient to state a claim because it is premised on his inadequately pled claim for cancellation of instrument. *See Shaterian v. Wells Fargo Bank, N.A.*, 829 F. Supp. 2d 873, 888 (N.D. Cal. 2011) (finding a request for declaratory relief unavailable "absent a viable underlying claim").

Further, as far as the other two assertions rely on the invalidity of the Subject Instruments, they also cannot maintain a claim for declaratory relief. Without plausible

---

[12] The Court understands Plaintiff's request for declaratory judgment to be premised only on the cancellation of instrument claim and his right to avoid foreclosure, not on the alleged RESPA claim or any other claim stated in the FAC. Therefore, the fact that Plaintiff's RESPA claim has survived dismissal does not save his claim for declaratory relief. *See Whiddon v. Specialized Loan Servicing LLC*, No. 2:16-CV-00283-RWS-JCF, 2017 WL 11151672, at *14 (N.D. Ga. June 23, 2017) ("[B]ecause RESPA provides no relief from foreclosure, [the plaintiff's] meritorious claim under that statute still does not entitle her to declaratory relief."), *report and recommendation adopted as modified*, No. 2:16-CV-0283-RWS, 2017 WL 11151671 (N.D. Ga. Sept. 26, 2017).

facts supporting the allegation that the Subject Instruments were legally infirm, the remaining facts alleged in the FAC do not raise any viable theory as to the unlawfulness of the subsequent default, foreclosure, or payments owed.  In fact, Plaintiff's allegations substantiate that he is in default on a financial obligation by alleging that after he obtained the loan for refinancing and initially made payments to SPS, he has been holding these payments "in abeyance" for SPS' failure to turn over certain documents in response to his RESPA request.  (*See* FAC ¶¶ 28, 31, 48.)

Thus, the Court finds no actual controversy exists underlying Plaintiff's declaratory relief claim and **GRANTS** Defendants' Motion to Dismiss this claim and dismisses it with prejudice and without leave to amend.  *See Allwaste*, 65 F.3d at 1530.

## VI.    Count 6: Accounting

Due to the alleged failure of SPS to respond to Plaintiff's request for documents, Plaintiff seeks to ascertain, in the alternative, how much remains due and payable by him under the Note through an accounting.  (FAC ¶¶ 96–98.)  Defendants seek to dismiss Plaintiff's request for accounting on the ground that he has not alleged any unknown balance due to Plaintiff by Defendants.  (Mem. of P. & A. at 15.)  Rather, Defendants contend, there is an ascertainable sum due to Defendants by Plaintiff.  (*See id.* ("Plaintiff owes for all unpaid sums due under the Note and Deed of Trust.").)

"The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law."  *Dairy Queen v. Wood*, 369 U.S. 469, 478 (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500 (1959)).  A plaintiff must meet the considerable burden of showing "that the accounts between the parties are of such a complicated nature that only a court of equity can satisfactorily unravel them."  *Id.*; *see also Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009) ("An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation.").

Plaintiff requests this calculation of the remaining balance not to ascertain damages due to him by Defendants, but because he and Defendants "alleged different figures for

- 31 -

the payoff" that Plaintiff owes Defendants.  (FAC ¶ 97–98.)  Plaintiff does not underpin this claim with allegations of fraud or breach of fiduciary duty or, indeed, any claim that Defendants owe him money.  As such, Plaintiff's accounting claim does not appear to be anchored to another claim against Defendants in this case.  *See Kimball v. Flagstar Bank F.S.B.*, 881 F. Supp. 2d 1209, 1225 (S.D. Cal. 2012) (citing *Union Bank v. Super. Ct.*, 31 Cal. App. 4th 573, 594 (1995)) (dismissing accounting claim where plaintiffs failed to sufficiently state a claim for breach of fiduciary duty or fraud); *see also Janis v. Cal. State Lottery Com.*, 68 Cal. App. 4th 824, 833 (1998) ("A right to an accounting is derivative; it must be based on other claims.").  Rather, Plaintiff appears to seek an accounting to determine how much money he owes Defendants.  *See Alfino v. Litton Loan Servicing, LP*, No. EDCV 11-01034-VAP-DTBx, 2011 WL 13225023, at *11 (C.D. Cal. Aug. 24, 2011) (dismissing accounting claim because plaintiffs sought relief to determine amount of money owed by plaintiffs to defendants and not "to ascertain an amount owed to them.") (emphasis in original); *see also Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1137 (2014) ("Some underlying misconduct on the part of the defendant must be shown to invoke the right to this equitable remedy.").

Even if an accounting were properly alleged, Plaintiff has not claimed that the accounts here are so complicated as to require an accounting.  He seeks a sum that could be deduced from Defendants' records, which could be produced in discovery if Plaintiff sufficiently states claims for relief and would not require an equitable action for an accounting.  *See Dairy Queen*, 369 U.S. at 478 ("The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records.").

Finding that Plaintiff cannot maintain an accounting on the facts alleged, the Court **GRANTS** Defendants' Motion on this issue and dismisses the claim with prejudice and without leave to amend.  *See Allwaste*, 65 F.3d at 1530.

18cv1892

**VII.   Count 7: Unfair Competition**

Under California law, unfair competition is defined as "unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.   "Because section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair or fraudulent.   A practice is prohibited as unfair or deceptive even if not unlawful or vice versa." *Lippitt v. Raymond James Fin. Servs. Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003); *see also Lee v. Pep Boys-Manny Moe & Jack of Cal.*, 186 F. Supp. 3d 1014, 1034 (N.D. Cal. 2016) ("Under the unfairness prong of the UCL, a practice may be deemed unfair even if not specifically proscribed by some other law.").

Defendants argue that because Plaintiff's other claims fail, his UCL claim must as well.   (Mem. of P. & A. at 15–16.)   "[O]nly claims under the 'unlawful' prong require a predicate statutory violation and rise and fall with that underlying claim." *Hahn v. Select Portfolio Servicing, Inc.*, 424 F. Supp. 3d 614, 634–35 (N.D. Cal. 2020).   The Court determined above that Plaintiff has sufficiently stated a RESPA claim against SPS.   Thus, Plaintiff can maintain a UCL claim for unlawful practices against SPS. *See Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1201 (E.D. Cal. 2010).   However, Plaintiff does not state a UCL claim premised on statutory violations for any other Defendant.

Similarly, Plaintiff has established the requisite standing to bring a UCL claim against SPS under the "unfair" or "fraudulent" prongs. *See Hahn*, 424 F. Supp. 3d at 635. To establish standing under the UCL, a plaintiff must have suffered an injury-in-fact. *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1119 (N.D. Cal. 2016). A plaintiff suffers an injury-in-fact sufficient to confer standing under the UCL when the plaintiff: (1) expended money due to a defendant's unfair acts; (2) lost money or property; or (3) has been denied money to which they have a cognizable claim. *Id.*   Where a plaintiff alleges a UCL claim against multiple defendants, the plaintiff must allege that it "suffered injury in fact or lost money or property as a result of alleged unfair competition" of each

1  defendant.  *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 92 (2007) (brackets
2  omitted).

3      Plaintiff has pled facts stating that SPS' practices caused him such an injury.  The
4  surviving RESPA claim alleges that SPS took out a redundant forced-placed insurance
5  policy without following the necessary procedures and thus charged Plaintiff "unearned
6  interest and penalties on the balance" of his loan and failed to reimburse him.  (FAC ¶¶
7  33(c), 65.)  Taking the allegation that Plaintiff suffered these economic losses as true, the
8  Court finds this is sufficient to state standing, and therefore a claim, under the UCL against
9  SPS.  *See Gomez v. Nationstar Mortg., LLC*, No. 1:14-CV-1499-BAM, 2015 WL 966224,
10 at *12 (E.D. Cal. Mar. 4, 2015) (finding sufficient plaintiff's allegation that defendants
11 engaged in "unfair" practices under Section 17200 by force-placing unnecessary insurance
12 in violation of § 2605(k)(1) (A)).  However, again, Plaintiff has not alleged facts to support
13 that Defendants Quality or Credit Suisse engaged in unfair competition resulting in injury
14 to him.  *See Schulz*, 152 Cal. App. 4th at 92.

15     Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the UCL claim
16 against SPS.  However, it **GRANTS** the Motion as to Quality and Credit Suisse as to this
17 count.  Because Plaintiff is granted leave to amend his RESPA violation against Quality,
18 he is similarly granted leave to amend his pleading as to the UCL claim against Quality.
19 However, Plaintiff's claims against Credit Suisse are all dismissed with prejudice (Count
20 2, 5, and 6) and therefore cannot be amended to form the basis of a UCL claim against this
21 Defendant.  Accordingly, Plaintiff's UCL claim as to Credit Suisse is also dismissed with
22 prejudice and without leave to amend because amendment would be futile.  *See Allwaste*,
23 65 F.3d at 1530.

## CONCLUSION AND ORDER

24     Based on the foregoing analysis, the Court **ORDERS** as follows:

26     (1)    Defendants' Motion is **GRANTED** as to Plaintiff's claim for cancellation of
27 instrument (Count 2), receipt of stolen goods (Count 3), declaratory judgment (Count 5),
28 and an accounting (Count 6).  These claims are **DISMISSED WITH PREJUDICE**.

(2)     Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART** as to Plaintiff's RESPA claim (Count 1).  All RESPA claims against Defendant Quality and the RESPA claim premised on the QWRs and tax escrow account against Defendant SPS are **DISMISSED WITHOUT PREJUDICE**.  However, Plaintiff's RESPA claim regarding force-placed insurance against Defendant SPS survives dismissal.

(3)     Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART** as to Plaintiff's claim for Common Count (Court 4).  The Common Count against Defendant Quality is **DISMISSED WITHOUT PREJUDICE**.  However, Plaintiff's Common Count against Defendant SPS survives dismissal.

(4)     Defendants' Motion is **GRANTED IN PART and DENIED IN PART** as to Plaintiff's claim under California's Unfair Competition Law (Count 7).  The UCL claim against Defendant Quality is **DISMISSED WITHOUT PREJUDICE**.  The UCL claim against Defendant Credit Suisse is **DISMISSED WITH PREJUDICE**.  However, Plaintiff's UCL claim against Defendant SPS survives dismissal.

***

Plaintiff has not been granted leave to amend any of the claims against Defendant Credit Suisse.  Therefore, Defendant Credit Suisse is **DISMISSED**.  Plaintiff shall have until **April 6, 2021** to file an amended complaint fixing the deficiencies in his RESPA, Common Count, and UCL claims against Defendant Quality.  If Plaintiff elects not to file an amended complaint, Defendant Quality shall be deemed dismissed from the action and Defendant SPS shall file its Answer to the FAC by **April 13, 2021**.

**IT IS SO ORDERED.**

DATED: March 23, 2021

Hon. Cynthia Bashant
United States District Judge

18cv1892